EBENEZER CAPPS

*v.*

ISAAC WATTS.

GUARANTY. In a suit brought upon the following instrument:

"VANDALIA, ILL., April 16, 1864.

"In consideration of sixty-five dollars, to be paid to J. & J. W. Bunn, Springfield, Illinois, I, Charles Capps, hereby agree to make a warranty deed to Isaac Watts to the following described real estate, viz.: Lot two, block nine, Gill's west addition, Atlanta, Logan Co., Illinois. The above premises having been in law, and if not decided at this date, the above to be a firm contract — said Isaac Watts agreeing to pay all taxes against said real estate, provided the same has not been sold for taxes, and is beyond redemption. If the property has been sold and the time of redemption expired, then the above to be null and void, otherwise to remain in full force and effect — said Capps giving possession on the 7th day of May, 1864 — said Watts being the plaintiff in the suit against said real estate, hereby agrees to dismiss said suit at his, said Watts', costs.       (Signed)       CHARLES CAPPS,

"E. CAPPS,

"ISAAC WATTS.

"I, E. Capps, guarantee that Charles Capps complies with the above agreement.       (Signed)       E. CAPPS."

it is *held*, that the signature of Ebenezer Capps to the first contract was placed there as security for Charles Capps. That the guaranty written below and signed by him was to specify and explain the object of his signature to the first agreement.

WRIT OF ERROR to the Circuit Court of Fayette county; the Hon. CHARLES EMERSON, Judge, presiding.

This was an action of assumpsit, brought by Isaac Watts against Ebenezer Capps, in the Circuit Court of Fayette county.

The declaration alleges that the plaintiff and one Charles Capps entered into a written agreement (the same as set out in the opinion of the court), and avers that the defendant, in consideration that the plaintiff would enter into said contract, signed the same as guarantor for the performance of said contract by Charles Capps; that none of the causes existed which were to prevent said contract from becoming a firm contract; that the plaintiff had dismissed the suit referred to; that he had paid taxes on the lot, and redeemed the same from tax sales; and paid costs to the amount of sixty-five dollars; that Charles Capps had refused to convey the lot; and that the same was worth $500; that Charles Capps was insolvent; and by means of the premises the defendant became liable, etc.

Plea — general issue and notice. Trial by the court — jury being waived.

On the trial, the agreement set out in the opinion was offered in evidence by the plaintiff, and objected to by the defendant, objection overruled, and contract read.

Record of Logan Circuit Court showing, that a suit for foreclosure of mortgage in favor of *Isaac Watts* v. *Albert Goodell & Charles Capps*, was dismissed by the plaintiff at his own cost.

Certificate of redemption from sale for taxes by Isaac Watts of the lot described in contract.

Receipt from J. & J. W. Bunn to Isaac Watts for sixty-five dollars, to be applied in favor of Charles Capps.

—— Tripp, a witness, stated that the lot in question was worth, in 1864, the sum of four hundred and twenty-five dollars.

J. W. Ross stated, that, before commencement of suit, he, as the agent of plaintiff, had demanded from Charles Capps a deed for the property which was refused; that Charles Capps

had made several propositions to settle, some of which were accepted, and Capps failed to comply; said he was poor and not able to pay the money; did not think it was right he should do so; that said Capps had no property that he knew of; did not know whether he was insolvent or not.

Lewis L. Cluxton stated he was assessor in Vandalia, in 1863, 1864, 1865; that Charles Capps said he had nothing but his house furniture.

On the part of defendant below:

Charles W. Higginbottom stated he was present when the said contract was written and that he wrote the same; did not know that E. Capps had signed the same until he saw it at this trial; that he has no recollection of E. Capps signing it or being asked to sign it; that he supposes E. Capps signed it as security for Charles Capps; after the contract was executed it was handed to Mr. Watts, and all of them left the room, except himself and E. Capps; in about ten or twenty minutes, or perhaps half an hour, Watts came back and asked E. Capps if he would not guarantee the said contract, between Charles Capps and himself; E. Capps said he had no objection, and that he would; witness then wrote the guaranty at the bottom of the contract, and Capps signed it and gave it to Watts, and Watts then left; there was nothing received by Capps for guaranteeing said contract nor any thing promised to him; he was asked to sign it as stated, and he did so.

This was all the testimony; judgment for plaintiff for four hundred and twenty-five dollars, to which defendant excepted.

The case is brought to this court by writ of error.

Mr. A J. GALLAGHER, for the plaintiff in error.

Messrs. STEWART, EDWARDS & BROWN, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of assumpsit, brought by Isaac Watts against Ebenezer Capps, upon the following instrument:

"VANDALIA, ILL., April 16, 1864.

"In consideration of sixty-five dollars, to be paid to J. & J. W. Bunn, Springfield, Illinois, I, Charles Capps, hereby agree to make a warranty deed to Isaac Watts to the following described real estate, viz.: Lot two, block nine, Gill's west addition, Atlanta, Logan Co., Illinois. The above premises having been in law, and if not decided at this date, the above to be a firm contract—said Isaac Watts agreeing to pay all taxes against said real estate, provided the same has not been sold for taxes and is beyond redemption. If the property has been sold and the time of redemption expired, then the above to be null and void, otherwise to remain in full force and effect—said Capps giving possession on the 7th day of May, 1864—said Watts being the plaintiff in the suit against said real estate hereby agrees to dismiss said suit at his, said Watts', costs.      (Signed)      CHARLES CAPPS,

"E. CAPPS,

"ISAAC WATTS.

"I, E. Capps, guarantee that Charles Capps complies with the above agreement.      (Signed)      E. CAPPS."

A jury was waived, and on the trial one Higginbottom was called as a witness, who stated that he wrote the instrument; that he had no recollection of Ebenezer Capps signing the body of the instrument; that, after the contract was executed, Watts and Charles Capps withdrew, leaving himself and Ebenezer Capps; that in ten or twenty minutes or half an hour Watts returned and asked Ebenezer Capps if he would not guaranty the contract for Charles Capps, that Capps said he would, and thereupon witness wrote the guaranty at the bottom of the contract and Ebenezer Capps signed it. The witness further stated that no consideration was paid for Capps' guaranty and that both of his signatures were genuine.

It is insisted by the counsel for plaintiff in error, that the guaranty was a contract subsequent to the original, and that it needed both a consideration and a revenue stamp to make it valid. The original contract, it should be remarked, was

stamped. But our construction of this transaction is simply this. By an examination of the agreement, it will be seen that Ebenezer Capps had no interest in it whatever. He was not required by it to do any thing. His first signature, then, under that of Charles Capps, is senseless, except upon the theory that he placed it there with a view of becoming security for Charles. We do not say that this would be a legal presumption from his unexplained signature, but the guaranty written below and signed by him removes all doubt. It probably occurred to Watts, after he retired from the room, that the signature of Ebenezer Capps, as it then stood, might admit of controversy as to its object, and he therefore returned and had him specify the object by re-signing under a guaranty written out in full. As it would be absurd to have him guarantee his own contract, it is evident the parties did not consider he had signed the instrument as a principal. We must suppose that both his signatures were intended for the same purpose, and to bind him in the same way, and that the only object of the second signing under the guaranty was to explain the purpose of the first. We regard the second signature as but a part of the transaction which had occurred a few minutes before, and as only completing what the parties had already sought to do, and therefore requiring neither a new consideration nor a new stamp. The other objection, that there was a variance between the instrument offered in proof and that described in the declaration, is without foundation in the view we have taken of the case.

*Judgment affirmed.*